J-A12032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SUKHJIT SINGH | : | |
| Appellant | : | No. 1033 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 12, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001805-2022

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED DECEMBER 2, 2025**

Sukhjit Singh ("Singh") appeals from the judgment of sentence following his convictions for rape of a child and related offenses.[1] We affirm Singh's convictions, finding his challenges to the sufficiency of the evidence meritless, but, because the trial court sentenced Singh outside of the guidelines on one count, without stating its reasons therefor, and also later issued an amended sentencing order following Singh's notice of appeal, which is a legal nullity, we vacate and remand for the limited purpose of resentencing consistent with this memorandum.

The trial court provided the following overview of the factual and procedural history:

> . . . [In September 2021,] then 11-year-old G.B.[] left [the home of] her father, Kunal Bakhru[ ("Bakhru"),] and [took a cab]

---

[1] **See** 18 Pa.C.S.A. § 3121(c).

to her mother's house. She told her mother that co-defendant Sukhjit Singh [("Singh")] had sexually assaulted her. G.B.'s mother . . . immediately, took G.B. to St. Christopher's Children's Hospital[,] and the matter was reported to authorities. Based on their investigation, the Commonwealth advanced the theory at trial that [Bakhru] permitted [Singh] to engage in sex acts with G.B. in exchange for money, cigarettes, and alcohol. [G.B. testified Singh touched her vagina and anus with his penis on multiple occasions, touched her chest under her clothing with his hand, and tried to force her to perform oral sex on him. After disclosure, she tested positive for vaginal and rectal chlamydia, which a Commonwealth expert explained is indicative of a sexual assault, given G.B.'s age; Singh later tested negative for chlamydia, but it was unknown if the negative result was a false negative, the chlamydia had cleared up on its own, or whether Singh obtained treatment anonymously.]

* * * *

On August 23, 2023, jury trial began against . . . Singh on charges[, in addition to] rape of a child, [of] indecent assault of a child, corruption of minors, trafficking in individuals, patronizing victim of sexual servitude, attempted involuntary deviate sexual intercourse [("IDSI")] with child, conspiracy to rape of a child, conspiracy to indecent assault, and conspiracy to trafficking in individuals.[2]

* * * *

Following a four-day trial, the jury returned a verdict of guilty to all the charges against Singh. He was sentenced on January 12, 2024 . . . to an aggregate term of 33 ½ to 67 years' incarceration.

[Singh] filed a motion for post-sentence relief, which was denied.

_____

[2] *See* 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a)(1)(ii), 3011(a)(1), 3013(a)(1), 901(a), and 903(a).

Trial Ct. Op., 7/19/24, at 1-2 (paragraphs re-ordered for clarity; unnecessary capitalization omitted). Singh timely appealed in March 2024, and several months after the notice of appeal, the trial court *sua sponte* entered an amended sentencing order purporting to correct errors in the original sentence, including, *inter alia*, reducing the sentence for count sixteen, conspiracy to commit trafficking in individuals, from outside of the guidelines to within the guidelines. **See** Am. Sentencing Order, 7/24/24. Both Singh and the trial court have complied with Pa.R.A.P. 1925.

Singh raises the following issues for our review:

1. There was insufficient evidence presented at the time of trial to find . . . Singh guilty of the following offenses:

   a. There was insufficient evidence to find . . . Singh guilty of trafficking in individuals as no evidence was presented at trial that Singh recruited, enticed, solicited harbored, patronized the minor victim. There was no evidence presented that Singh knew or recklessly disregarding that G.B was subject to sexual servitude. Likewise, Singh did not benefit [financially] or receive anything of value for this alleged act or acts. Finally, the evidence was insufficient to establish any course of conduct or was it proven beyond a reasonable doubt that G.B. was subject to sexual servitude.

   b. There was insufficient evidence to find Singh guilty of patronizing a victim of sexual servitude as there was no evidence that any sexual act which was alleged to have been committed by Singh was the result of G.B. being human trafficked.

   c. There was insufficient evidence Singh committed the crime of attempted involuntary deviate sexual intercourse as there was no evidence Singh took a substantial step as there was no attempt to have oral sex with the complainant.

    d.   There was insufficient evidence to convict Singh of indecent assault as the Commonwealth failed to prove the course of conduct required in order to accurately reflect the gradation of the offense.

    e.   There was insufficient evidence presented at trial that Singh engaged in a conspiracy with . . . Bakhru to commit the offense of conspiracy to commit the crime of trafficking in individuals as there was no showing of any shared criminal intent or same criminal purpose, *i.e.*, there was a buyer / seller relationship between Singh and Bakhru not a criminal conspiracy.

    f.   There was insufficient evidence presented at trial that Singh engaged in a conspiracy with . . . Bakhru to commit the offense of rape of a child and indecent assault of a child as there was insufficient evidence presented at the time of trial that Singh and Bakhru agreed to engage in this conduct, *i.e.*, the sexual abuse of the victim.  Further, there was no evidence that the co-defendant, Bakhru agreed to aid Singh in planning or commissioning this conduct i.e., the sexual abuse of the victim.

2.   The trial court abused its discretion in sentencing Singh outside of the guideline range of the Pennsylvania sentencing guidelines and failed to articulate the reasons necessitating the sentence which was ultimately imposed.

3.   The trial court erred in amending the sentencing sheet approximately six (6) months after sentencing and without notice to Singh or his attorney amending the sentence(s) on two of the charges.

Singh's Br. at 7-9 (unnecessary capitalization omitted).

## I.   Sufficiency

Singh's first issue, which contains multiple sub-issues, implicates the sufficiency of the evidence for several of his convictions.  Our standard of review for sufficiency claims is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336–37 (Pa. Super. 2019) (internal citation and indentation omitted).

We address Singh's sufficiency challenges *seriatim*.

*A. Trafficking in individuals*

Trafficking in individuals is a first-degree felony if a person "recruits, entices, solicits, patronizes, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to sexual servitude[.]" 18 Pa.C.S.A. § 3011(a)(1). The statute imposes a maximum term of forty years of incarceration for this violation if it is a minor who is subjected to sexual

servitude, and this is part of a course of conduct. *See id*., § (b).[3] Sexual servitude is defined as, *inter alia*, a "commercial sex act or a sex act which is performed or provided by any individual and is induced or obtained from: [a] minor." 18 Pa.C.S.A. § 3001.

Singh contests that he patronized G.B. knowing she was subject to sexual servitude or that he engaged in a course of conduct. *See* Singh's Br. at 20-21. He also argues that the evidence was insufficient to prove he benefitted financially or received anything of value, or that G.B. was in fact subject to sexual servitude. *See id*. at 20.

The trial court explained that Singh's challenge is meritless:

> The evidence adduced at trial was overwhelmingly sufficient to establish each element of the crime of trafficking in individuals. The evidence showed that [Singh] patronized the victim[, who] testified that [Singh] came over [to] the house . . . almost every day . . .. Each time, he gave her father alcohol or money, her father left the apartment, and then [Singh] touched her. G.B. told the forensic interviewer and her mother the same thing. This testimony also established a course of conduct of trafficking in individuals. Course of conduct is defined as a "pattern of actions

_____

[3] To the extent Singh's argument relates to the "course of conduct" element, we note the following: The jury found beyond a reasonable doubt that Singh engaged in a course of conduct for purposes of this charge. *See* Verdict Sheet, 8/28/2023, at 2. While Singh presents his challenge to the "course of conduct" as part of a sufficiency of the evidence for his conviction, it is properly considered a challenge to the legality of his sentence because it increases the applicable sentence. *See*, *e.g.*, *Commonwealth v. Nulph*, 315 A.3d 73 (Pa. Super. 2024) (unpublished memorandum at *6-*7) (reviewing a sufficiency challenge to a conviction based on the assertion that the element increased the grading for sentencing purposes, but noting that this implicates the legality of the sentence); *see also* Pa.R.A.P. 126(b) (unpublished memoranda decisions filed by this Court after May 1, 2019 are citable for their persuasive value).

composed of more than one act over a period of time, however short, evidencing a continuity of conduct."

Trial Ct. Op., 7/19/24, at 3-4 (citations to the record omitted).

Following our review, we conclude that Singh's challenge to the sufficiency of the evidence for this conviction is meritless. G.B. testified Singh assaulted her, including putting his penis in her vagina and buttocks, on more than five separate incidents, which constitutes a course of conduct. *See* N.T., 8/23/23, at 141-42. This same conduct constitutes sexual servitude, in that sexual servitude includes a sex act obtained from a minor. *See* 18 Pa.C.S.A. § 3001. The fact that Singh placed G.B. in sexual servitude by performing a sex act on her, in exchange for paying Bakhru money and giving him alcohol, also establishes Singh's knowledge that G.B. was subject to sexual servitude. Additionally, Singh maintained G.B. by renting the apartment for G.B. and Bakhru,[4] in which Bakhru housed G.B. and made her available for sex with Singh, in exchange for money and alcohol. *See* N.T., 8/25/23, at 109 (testimony that the PECO energy bill for Bakhru's apartment was in Singh's name); *id*. at 228 (testimony by an officer that Singh was the renter of the apartment in which Bakhru and G.B. lived); N.T., 8/28/23, at 165 (testimony

---

[4] While "maintain" is not expressly defined in the statute, it is commonly defined as "to provide for; support[.]" The American Heritage Dictionary of the English Language 1058 (5th ed. 2018). *See also Commonwealth v. Gamby*, 283 A.3d 298, 307 (Pa. 2022) (noting that dictionary definitions may be used to ascertain the meaning of words and phrases not defined in legislation including the Crimes Code).

by a friend of Bakhru that Singh rented the apartment for Bakhru and G.B.).[5]

Accordingly, the evidence was sufficient to prove Singh trafficked in an individual, namely, G.B.

*B. Patronizing a victim of sexual servitude*

The Crimes Code defines this offense as follows: "A person commits a felony of the first degree if the person engages in any sex act or performance with another individual knowing that the act or performance is the result of the individual being a victim of human trafficking." 18 Pa.C.S.A. § 3013(a)(1). By law, human trafficking occurs when a person:

> (1) recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude . . ..

18 Pa.C.S.A. § 3011. **See also Commonwealth v. Sipps**, 225 A.3d 1110, 1114 (Pa. Super. 2019). "Involuntary servitude" includes sexual servitude. **See** 18 Pa.C.S.A. § 3001.

Singh argues the evidence was insufficient to support this conviction because there is no evidence G.B. was human trafficked. **See** Singh's Br. at 21.

---

[5] Singh asserts he did not benefit financially or receive anything of value; however, this is not an element of subsection (a)(1), for which he was charged and convicted, but (a)(2), for which he was not charged. Accordingly, Singh's argument in this respect misses the mark.

The trial court explained that Singh's challenge is meritless on the basis of the same facts stated above in support of the conviction for trafficking in individuals. **See** Trial Ct. Op., 7/19/24, at 4. Based on our review, Singh's challenge to the sufficiency of the evidence warrants no relief. In **Sipps**, this Court affirmed a conviction for patronizing a victim of sexual servitude where Sipps paid money to a third party (her pimp) to have sex with the victim, V.M., after her pimp advertised her services on the internet. This Court concluded that the evidence showed that Sipps had sex with V.M. knowing she was the victim of human trafficking. Similarly here, Singh performed sex acts on G.B.; the remaining requirement for this conviction is that he did so as the result of G.B. being a victim of human trafficking. The evidence in the light most favorable to the Commonwealth establishes that Singh gave alcohol, money, and other things of value to Bakhru so that he, Singh, could perform sex acts on the minor G.B., as in **Sipps**. **See** 225 A.3d at 1114-15. Additionally, as noted above, "sexual servitude" includes a minor on whom sex acts are performed, and "involuntary servitude" includes sexual servitude. **See** 18 Pa.C.S.A. § 3001. As noted above, Singh maintained G.B. who was subject to involuntary servitude in the form of sexual servitude. As such, the evidence was sufficient to sustain Singh's conviction for patronizing a victim of sexual servitude. Accordingly, Singh's argument merits no relief.

*C. Attempted IDSI*

Singh argues the evidence was insufficient to sustain this conviction because there was no evidence that he attempted to have "sexual intercourse in any fashion" with G.B., including oral or anal sex, and that he took no substantial steps toward doing so. ***See*** Singh's Br. at 22-23.

18 Pa.C.S.A. § 901 criminalizes attempted, but uncompleted, offenses when a substantial step is taken toward the commission of that offense with the intent to commit that crime, including, as in this case, involuntary deviate sexual intercourse with a child, codified at section 3123(b), which provides, "A person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). Deviate sexual intercourse includes oral sex. ***See Commonwealth v. Banninger***, 303 A.3d 1085, 1092 (Pa. Super. 2023).

The trial court explained that Singh's challenge is meritless: "In this case, G.B. testified credibly that [Singh] tried to have her put his penis in her mouth but she pushed him away and it did not occur. (N.T., 8/23/23, p.160) That is . . . a substantial step toward involuntary deviate sexual intercourse. As such there is no merit to this argument." Trial Ct. Op., 7/19/24, at 5.

Following our review, we conclude this issue is meritless. Deviate sexual intercourse includes oral sex. ***See Banninger***, 303 A.3d at 1092. IDSI occurs when one engages in deviate sexual intercourse with a complainant under the

age of thirteen. **See** 18 Pa.C.S.A. § 3123(b). There is no dispute G.B. was under thirteen at the time of the offense. Singh's attempt to force G.B. to perform oral sex on him, by taking a substantial step and literally grabbing her head and forcing it downward toward his penis, satisfies the statutory requirements for attempted IDSI. **See** N.T., 8/23/23, at 160-62 (G.B. testifying Singh tried more than once to push her head down to make her perform oral sex on him, and G.B. resisted by pushing back).

### D. Indecent Assault

Singh argues the jury charge for indecent assault should have included a place for the jury to determine whether Singh's assault was part of a course of conduct, because the trial court verbally indicated the verdict sheet would include this. **See** Singh's Br. at 23-24. Because the verdict sheet did not include the course of conduct, he argues the evidence was insufficient to sustain this conviction.

We note that while Singh asserts a defect in the jury verdict form, this is a separate issue from the sufficiency of the evidence; as only the latter, *i.e.*, the sufficiency of the evidence, is at issue in this appeal, we limit our review to his sufficiency claim.[6] A course of conduct is required to be proven if

---

[6] We observe the trial court instructed the jury that a course of conduct was required to be proven beyond a reasonable doubt for a conviction for this offense; further, the verdict sheet did not specify the elements of the offense and omit the course of conduct; rather, the elements of the offense were not included in the verdict sheet. In any event, Singh does not indicate he

*(Footnote Continued Next Page)*

- 11 -

indecent assault is graded as a third-degree felony, as was the case here for count five (indecent assault on a person under thirteen years of age). *See* 18 Pa.C.S.A. § 3126(b)(3)(ii); Information, 5/11/22, at 1.

G.B. testified, in addition to the more than five times that Singh penetrated her vagina with his penis, he also put his penis in her anus more than once, and touched her chest under her clothes, and used his hand to touch her genitals. *See* N.T., 8/23/23, at 138-39, 142. This demonstrates Singh's course of conduct of perpetrating indecent assault on G.B. *See* 18 Pa.C.S.A. § 3126(a)(7); *Commonwealth v. Gamby*, 283 A.3d 298, 311-12 (Pa. 2022) (indecent assault has two requirements: "first, the unwanted touching of certain body parts, and, second, sexual intent, *i.e.*, touching for the purpose of arousing or gratifying sexual desire"); *Interest of D.P.*, 233 A.3d 847, 852 (Pa. Super. 2020) (providing that "a course of conduct is established with evidence of multiple acts over time") (internal citation and quotations omitted).

> *E. & F. Conspiracy to commit trafficking in individuals, rape of a child and indecent assault of a child.*

---

objected below to the verdict sheet, and our review discovered no objection by Singh on these grounds. *See* Verdict Sheet, 8/28/23; *see also* *Commonwealth v. duPont*, 730 A.2d 970, 984-85 (Pa. Super. 1999) (finding waiver of a challenge to a verdict sheet for failure to object below). To the extent Singh's argument is construed as a challenge to the verdict sheet, it is therefore waived.

Singh argues the evidence was insufficient to support his convictions for conspiracy. Citing, *inter alia*, **U.S. v. Johnson**, 592 F.3d 749 (7th Cir. 2010), Singh argues that a defendant cannot be convicted of conspiracy where the underlying crime involved the buying and selling of contraband, because they lack a shared criminal intent, that is, the buyer's intent is to buy; the seller's intent is to sell—and at no point do their intents align. **See** Singh's Br. at 26. Bakhru elaborates this point: the parties do not possess a shared criminal intent because they have opposite and diverse intents. **See id**. at 27. **See also id**. at 28 (citing **U.S. v. Kapp**, 781 F.2d 1008, 1010 (3rd Cir. 1986)); **id**. at 29 (quoting **U.S. v. Moe**, 781 F.3d 1120, 1128 (9th Cir. 2015)). Singh reasons that if conspiracy could be found whenever there was an agreement to buy and sell contraband, every narcotics sale would constitute conspiracy. Singh notes that to overcome this obstacle, the Commonwealth must establish a joint venture. **See id**. at 31-32 (discussing **U.S. v. Maldonado**, 893 F.3d 480, 484 (7th Cir. 2018)).

The trial court considered Singh's argument and determined it warranted no relief:

> In the instant matter, G.B. testified that [Singh] came over the house, gave her father alcohol or money, her father would leave, and then [Singh] would touch her. She explained that one time, her father was watching through the door as [Singh's] penis was in her vagina. Her father left. She later asked him why he did not stop it and he responded that they needed the money. (N.T., 8/23/23, p. 145-148) [Singh's] overt acts of the conspiracy were to give Bakhru money [] or alcohol and then to assault G.B. Bakhru's overt acts were to provide access to his daughter for the abuse, to accept the money or alcohol, to leave the apartment,

- 13 -

and to allow this arrangement to continue on an almost daily basis. There is no merit to the allegations that the evidence was insufficient to establish conspiracy between Singh and Bakhru.

Trial Ct. Op., 7/19/24, at 6.

Following our review, we conclude, like the trial court, that the evidence was sufficient to support Singh's conspiracy convictions. Initially, we note that the authority Singh relies on consists entirely of federal caselaw, which is non-binding on this Court. **See Commonwealth v. Jones**, 951 A.2d 294, 301 (Pa. 2008) (noting it is well settled that our courts are not bound by decisions of federal courts inferior to the United States Supreme Court).[7]

Additionally, even if inclined to take note of these non-binding decisions as persuasive, we note that the principal case Singh relies on, **Johnson**—and the authority on which it relied—has been overruled. Consistent with the trial court's determination—that, in relevant part, the conspiracy was evinced by the prolonged relationship between Bakhru and Singh and the shared criminal intent that Singh would rape G.B. in exchange for compensation to Bakhru— in **United States v. Page**, 123 F.4th 851, 862 (7th Cir. 2024), *cert. denied*, 145 S.Ct. 2794 (2025), the Seventh Circuit Court of Appeals, sitting *en banc*,

---

[7] Singh cites one U.S. Supreme Court case, **U.S. v. Falcone**, 311 U.S. 205 (1940) in support of this claim. However, the issue there was whether parties who furnished legal supplies to others who used those supplies to an "illicit distiller" were liable for conspiracy, and the Court held the suppliers could not be because they had no knowledge of the conspiracy, even if they had knowledge of the illicit distilling operations. Accordingly, **Falcone** is inapposite to this case.

overruled **Johnson** and concluded that "evidence of **repeated**, distribution-quantity transactions of illegal drugs between two parties, on its own, can sufficiently sustain a drug conspiracy conviction . . .." **Cf**. **Commonwealth v. O. Johnson**, 26 A.3d 1078, 1093 (Pa. 2011) (noting the statutory definition of conspiracy is a "**continuing course of conduct** which terminates when the crime or crimes which are its object are committed[,]" but finding the evidence insufficient for a conviction for a count of conspiracy where there was a lack of record support for an "'ongoing' conspiracy" to sell drugs beyond a single transaction) (emphasis added).

We note the following evidence of the conspiracy between Bakhru and Singh. When Singh came over to Bakhru's residence, he would give Bakhru alcohol and money, after which Bakhru would leave, and Singh would assault G.B. **See** N.T., 8/23/23, at 143-44. Singh touched G.B.'s genitalia, chest, and arm. **See id**. at 134. Specifically, Singh touched the inside of her vagina with his fingers, used his whole hand to touch her chest under her clothes. **See id**. at 136-39. Singh used his penis to touch her vagina and buttocks, and that his penis would go inside of both. **See id**. at 141-42. This occurred more than five times. **See id**. at 142. Singh also attempted to force G.B. to perform oral sex on him. **See id**. at 160-61. The abuse would happen on the couch, and Singh and G.B. would be partially clothed, but with their pants off. **See id**. at 145-46. G.B. recalled that in one instance, Bakhru observed from the front door Singh abusing G.B. and did nothing, but instead left the

apartment. *See id*. at 147. G.B. later confronted Bakhru and asked why he hadn't done anything, and Bakhru responded that he needed the money. *See id*. at 148-49. Singh continued to abuse G.B. in exchange for giving Bakhru alcohol and money. *See id*. at 149. Additionally, the PECO energy bill for Bakhru's apartment was in Singh's name, *see* N.T., 8/25/23, at 109, and Singh was also the renter of the apartment in which Bakhru and G.B. lived. *See id*. at 228. The foregoing shows the evidence was sufficient to prove that Bakhru engaged in conspiracy with Singh based on their course of conduct during which Bakhru would repeatedly make G.B. available for Singh to assault in exchange for alcohol and money, which evinces their shared criminal intent that Singh would abuse G.B. *See Dunkins*, 229 A.3d at 633 (a defendant is liable for conspiracy where there is an agreement and shared criminal intent and a co-conspirator commits an overt act toward the commission of the crime); *Commonwealth v. Henderson*, 378 A.3d 393, 398-99 (Pa. Super. 1977) (affirming a conviction for conspiracy to commit rape where the appellant enticed the victim into his car and supplied marijuana to her, signaled to a co-conspirator that he could begin raping the victim, and then sat passively by while the co-conspirator raped the victim,

and made suggestive comments afterward but did not personally assault her).[8]

## II. Sentencing

Next, we address Singh's challenge to the discretionary aspects of his sentence. Initially, we focus our review on Singh's challenge to the sentence for count sixteen, conspiracy to commit trafficking in individuals—in which he asserts the trial court sentenced him outside of the guidelines without stating its reasons—as it is dispositive of whether we are required to vacate the judgment of sentence and remand for resentencing.[9]

_____

[8] While we decline Singh's invitation to consider G.B. the equivalent of an inanimate object, namely, an illegal drug, we note that, even in the case of illegal drugs, as noted above, there is authority holding that a continuing course of conduct between a buyer and seller may constitute conspiracy. *See Page*, 123 F.4th at 862 (repeated drug transactions between two parties can sustain a drug conspiracy conviction).

[9] This Court has explained:

> [A]n appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Padilla-Vargas*, 204 A.3d 971, 975 (Pa. Super. 2019) (citation omitted; brackets in original); *see also* 42 Pa.C.S.A. § 9781(b). Singh filed a timely notice of appeal and a Rule 2119(f) statement. *See*
*(Footnote Continued Next Page)*

Singh argues the trial court erred by imposing a sentence several times the guideline-range for count sixteen, conspiracy to commit trafficking in individuals, with the standard range being 60-78 months and the sentence originally imposed being 157-314 months of imprisonment. **See** Singh's Br. at 45; **see also** Order, 1/12/24, at 2 (imposing the 157-314-month sentence for count 16). The Commonwealth agrees the trial court erroneously sentenced Singh outside of the guidelines, though it notes this 157-314-month sentence was imposed concurrently to all counts, and therefore did not increase Singh's maximum or minimum. **See** Commonwealth's Br. at 40. The Commonwealth additionally concedes the trial court did not provide a contemporaneous written statement of the reasons for this sentence or state on the record its reasons for deviating from the guidelines. **See id**. Accordingly, the Commonwealth agrees that Singh's original sentence must be vacated and remanded for resentencing. **See id**. at 41.[10] Notably, the trial court acknowledges it imposed the original sentence erroneously. **See**

_____

Singh's Br. at 36-37. Singh's assertion that the trial court sentenced outside of the guidelines without stating its reasons for so doing presents a substantial question. **See Commonwealth v. R. Johnson**, 666 A.2d 690, 692 (Pa. Super. 1995). Singh preserved this issue in a post-sentence motion. **See** Mot. for Post-Sentence Relief, 1/22/24, at 29 n.9, 33 (indicating that the sentence for this count was several times the standard range, and that counsel was newly appointed and unable to ascertain whether the court articulated its reasons for the sentence). Singh has also included a Rule 2119(f) concise statement for the reasons for the allowance of appeal. **See** Singh's Br. at 36-38.

[10] This Court takes note of and appreciates the Commonwealth's candor.

Trial Ct. Op., 7/19/24, at 2 n.2 (noting this sentence as stated in open court was not the court's intention). Thus, we must vacate the judgment of sentence and remand for resentencing. **See R. Johnson**, 666 A.2d at 693-94 (vacating and remanding for resentencing where the trial court deviated from the guidelines without stating the reasons therefore).[11]

Additionally, Singh argues the trial court, noting its error, issued an unlawful amended sentencing order several months after Singh filed his notice of appeal. **See** Singh's Br. at 50. The trial court acknowledges it issued this amended order, **see** Trial Ct. Op., 7/19/24, at 2 nn.1, 2; and the Commonwealth concedes this untimely amended order was a legal nullity. **See** Commonwealth's Br. at 29, 35. Accordingly, we vacate the original and amended sentencing order and remand for resentencing. **See Commonwealth v. Lawrence**, 313 A.3d 173 (Pa. Super. 2024) (unpublished memorandum at *5-*6) (holding that an amended sentencing order filed after an appeal has been taken was not to correct a clear clerical error, and was therefore a legal nullity); **cf**. 42 Pa.C.S.A. § 5505 (permitting modification of orders within thirty days after entry provided no appeal has been taken).

_____

[11] We observe the trial court identified a second error in the original sentencing sheet, _i.e._, that it originally imposed a sentence for count ten to run concurrently with count one, but consecutive to counts eight and nine, contrary to its intention, **see** Trial Ct. Op., 7/19/24, at 2 n.1; it later amended count ten to run consecutively to counts one, five, six, seven, eight, and nine. **See** Am. Sentencing Order, 7/23/24.

Convictions affirmed, judgment of sentence vacated and remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/2/2025